[No. 22798. *En Banc*. January 30, 1931.]

THE STATE OF WASHINGTON, *on the Relation of George H. Rummens, Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY, *Respondent.*[1]

*Otto B. Rupp, Alfred J. Schweppe,* and *Tracy E. Griffin,* for relator.

*The Attorney General, E. W. Anderson, Assistant,* and *Harry A. Rhodes,* for respondent.

[1]Reported in 295 Pac. 730.

Main, J.—This action was brought in the superior court of King county to prohibit the county auditor of that county and the election board thereof, from giving notice of a special election to fill a vacancy on the supreme court of this state. To the complaint, a demurrer was interposed and sustained. The relator refused to plead further, and elected to stand upon his complaint. Judgment was entered dismissing the action, and the case was brought here for review by certiorari. At the time the case was heard, due to the emergency which existed, and the lack of time in which to prepare a formal opinion, an order was entered, affirming the judgment of the superior court, and reciting that a formal opinion would be prepared and filed later.

The facts essential to be stated are these: November 8, 1926, the Honorable Walter M. French was duly elected to the office of judge of the supreme court of this state, for a term of six years. He continued in that capacity until September 13, 1930, on which day he died. To fill the vacancy caused by the death of Judge French, the Honorable Adam Beeler was appointed. The question arose as to whether this appointment continued until the end of the term for which Judge French had been elected, or whether there should be an election to fill the vacancy on November 4, 1930, which was the date of the next succeeding general election in this state.

The first question is whether the election to fill the vacancy was a general or special election.

Section 3 of article IV of the constitution of this state, in part provides:

"If a vacancy occur in the office of a judge of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take

place at the next succeeding general election, and the judge so elected shall hold the office for the remainder of the unexpired term."

A like provision appears in § 5 of the same article, covering the matter of a vacancy occurring in the office of judge of the superior court.

Section 11044, Rem. Comp. Stat., is as follows:

"If a vacancy occur[s] in the office of a judge of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a judge to fill the vacancy, which election shall take place at the next succeeding general election at which a judge or judges of the supreme court shall be elected, and the judge so elected may qualify at any time within thirty days after his election, and shall hold the office for the unexpired term."

It will be noted that, under the constitutional provision quoted, if a vacancy occurs in the office of the judge of the supreme court, the election to fill such vacancy shall take place at the "next succeeding general election." By the statute quoted, it is provided that, if such a vacancy occurs, the election shall take place at the "next succeeding general election at which a judge or judges of the supreme court shall be elected, and the judge so elected may qualify at any time within thirty days after his election." A general election is one held to select an officer after the expiration of the full term of the former officer; a special election is one held to supply a vacancy in office occurring before the expiration of the full term for which the incumbent was elected. In *State ex rel. Fish v. Howell,* 59 Wash. 492, 110 Pac. 386, 50 L. R. A. (N. S.) 336, it was said:

"It is not necessarily the time or manner of holding an election to fill a vacancy that makes it a special election, but the fact that it is held at a time other than the time fixed by law to elect an officer for the regular or defined term.

"In the syllabus to *Kenfield v. Irwin,* 52 Cal. 164, the following definitions will be found:

" 'General election:—A general election is an election held to select an officer after the expiration of the full term of the former officer.

" 'Special election:—A special election is an election held to supply a vacancy in office occurring before the expiration of the full term for which the incumbent was elected'."

Under the holding in that case, it would seem to be definitely decided that an election, in accordance with the constitutional and statutory provisions above quoted, to fill a vacancy occurring upon the supreme court, is a special, and not a general, election.

In *State ex rel. Sampson v. Superior Court,* 71 Wash. 484, 128 Pac. 1054, Ann. Cas. 1914C 591, with reference to filling a vacancy upon the superior court, it was observed that:

"It will be conceded that, while the election of November 5 was, so far as it related to state, county and precinct officers, a general election, called and held pursuant to the required notice, any election, although held at the same time and place to fill any vacancy in any office, would be a special election under § 4782, Rem. & Bal. Code [§ 5155, Rem. Comp. Stat.], providing that 'Special elections are such as are held to supply vacancies in any office, whether the same be filled by the vote of the qualified electors of the state, or any district, county or township, and may be held at such times as may be designated by the proper officer.' The last clause would seem to indicate that, whenever a special election is to be held, the time for holding such an election shall be designated by the proper official."

It is there distinctly said that the election to fill the vacancy, although held at the same time and place as the general election, would be a special election.

In *State ex rel. Ferguson v. Superior Court,* 140 Wash. 636, 250 Pac. 66, it was held that an election to

fill a vacancy on the superior court was "at all events a special election in the sense that notice to the electors of such an election is necessary to its validity."

From what has already been said, it necessarily follows that the election to fill the vacancy caused by the death of Judge French, would be a special election. It is true that in the case of *State ex rel. Sears v. Gilliam,* 93 Wash. 248, 160 Pac. 757, there is language indicating, or stating, that an election to fill a vacancy occurring upon the superior court, is a general election, and not a special election. What is there said upon this question, had no relation to the facts there present, and is pure dictum. The case is properly decided upon the ground of lack of notice.

■ The election being a special one, the question which next arises is whether there is any affirmative constitutional or statutory authority for holding the election on November 4, 1930.

It will be admitted that the constitutional provision above mentioned is not self-executing, as has been said in some of the cases. The statute above quoted, however, goes further, and is more definite and specific. It is there expressly provided that, when a vacancy occurs in the office of the judge of the supreme court, the election to fill such vacancy shall take place at the next succeeding general election "at which a judge or judges of the supreme court shall be elected, and the judge so elected shall qualify at any time within thirty days after his election." Here is an election provided for which is affirmatively authorized by law. The statute, in no uncertain terms, fixes the date at which the election shall be held, and it operates as a call for such election.

It is said, however, that, under the direct primary law, no election can be held to fill a vacancy upon the supreme court, unless there has been a nomination

made under the provisions of that law. Section 5178, Rem. Comp. Stat., which is one of the sections of the primary election law, requires that all candidates for elective offices in this state, either state, county, municipal, precinct or congressional, shall be nominated at a direct primary election held in pursuance of this act, and provides "that this act shall not be held to refer to special elections for filling the vacancies of unexpired terms . . ." Section 5212, as amended in 1925 (Laws of 1925, Ex. Ses., p. 66, § 1), provides that:

"When there are to be elected at any general election one or more judges of the supreme court, or of the superior court of any county or judicial district, the candidates for each respective office whose names are to be placed on the general election ticket shall be determined as follows: . . . Where a vacancy or other cause shall necessitate the election of a judge of the supreme court, or of the superior court, for a short term, or unexpired term, and at the same election one or more judges are to be elected for the full term, candidates may announce themselves for either the full, or unexpired, or short term, and ballots shall be arranged accordingly, . . ." Rem. 1927 Sup., § 5212.

This provision with reference to short terms, or unexpired terms, was brought into the act for the first time by the amendment in 1925. There is nothing in the section as amended, or in the other sections of the act, which in any way prohibits a special election, if the vacancy occurs at too late a date for a nomination to be made under the provisions of the direct primary law. That law covers the nominations for vacancies when the same may be made in accordance with its provisions. While the act, as amended in 1925, makes it apply to special elections which occur at a time when a nomination can be made under its provisions, it does not repeal either the prior section therein, with refer-

ence to special elections occurring after the date of the primary, or Rem. Comp. Stat., § 11044, which fixes the date at which elections to fill vacancies on the supreme court shall be held.

In the case now before us, Judge French's death occurred subsequent to the primary election, and, consequently, there could be no nomination under the direct primary law to fill the vacancy, but under Rem. Comp. Stat., § 11044, which has not been repealed, there was a call for the election for November 4, 1930. A nomination is not necessary to the validity of an election, unless there is a constitutional or statutory provision so providing. It follows that, where a vacancy occurs subsequent to the primary election, and there is a statutory call for a special election which shall be held at the next succeeding general election at which judges of the supreme court shall be elected, such special election will be held, even though there has been no prior nomination under the direct primary law, providing the vacancy occurs in time to give notice of such election. In this case, the death of Judge French occurred fifty-two days prior to November 4, 1930. Section 5157, Rem. Comp. Stat., provides that it shall be the duty of each county auditor to give at least thirty days notice of any general election, and at least "fifteen days previous to any special election . . ." By chapter 53, Laws of 1923, p. 172 (Rem. 1927 Sup., § 5148-3), it is provided that, in class A counties, the notice shall be for a period of not less than thirty days. There was ample time, therefore, in all the counties of the state, to comply with the statutory provisions with reference to notice.

In the case of *State ex rel. Sampson v. Superior Court,* 71 Wash. 484, 128 Pac. 1054, Ann. Cas. 1914C 591, there was no election, because there had been no notice given. In *State ex rel. Sears v. Gilliam,* 93

Wash. 248, 160 Pac. 757, there was no nomination, be-
cause there was no notice, and the vacancy occurred
in ample time to file a declaration of candidacy under
the direct primary law. In *State ex rel. Ferguson v.
Superior Court,* 140 Wash. 636, 250 Pac. 66, it was
held that there could be no election, because the va-
cancy occurred too late to give the statutory notice.
In *State ex rel. Oleson v. Minor,* 105 Neb. 228, 180 N.
W. 84, it was held by the supreme court of Nebraska
that, where a vacancy in the supreme court occurred
too late for a nomination to be made under the direct
primary law of that state, the appointee named to fill
the vacancy was entitled to hold the office until a suc-
cessor should be regularly nominated and elected, pur-
suant to the provisions of a nonpartisan judiciary law.
There is no discussion in that case as to whether an
election to fill the vacancy is general or special, and
there is no mention in the opinion of any statute sim-
ilar to Rem. Comp. Stat., § 11044, which calls a special
election to fill a vacancy; neither is there any men-
tion made of any proviso in the direct primary law of
that state, to the effect that it shall not apply to a
special election. It cannot be said, therefore, that that
case meets the situation which is presented in the case
now before us.

The trial court's judgment was correct.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MILLARD,
JJ., concur.

FULLERTON, J., concurs in the result.

PARKER, J. (dissenting)—I respectfully dissent from
the conclusion of the majority in the foregoing opin-
ion. Since 1911, our primary election statutes have
been a part of our election machinery, applicable to
nomination and election of judges of the supreme and
superior courts, to fill vacancies as well as for full

528

terms. Chapter 101, Laws of 1911, p. 489; Laws of 1919, p. 199; Laws of 1921, p. 373; Laws of 1925, Ex. Ses., p. 66; Laws of 1927, p. 140; Rem. Comp. Stat., § 5212; Rem. 1927 Sup., § 5212. It is true, as stated in the majority opinion, we find in Rem. Comp. Stat., § 5178, relating to primary elections, the words:

"This act shall not be held to refer to special elections for filling the vacancies of unexpired terms, . . ."

But that was the law as enacted by ch. 82, Laws of 1909, p. 169. These later acts, as I read them, plainly supersede that provision, in so far as nomination and election of judges of the supreme and superior courts are concerned. In other words, these later acts make our primary election statutes applicable to the filling of vacancies in unexpired terms of judges of those courts. I do not understand the majority opinion to hold to the contrary in its general result.

While our constitution and general statutes call for the holding of elections to fill vacancies in the office of judges of the supreme and superior courts "at the next succeeding general election," such constitutional and statutory provisions, in my opinion, mean simply that such election shall be held only when there is time, following the occurrence of the vacancy, to set in motion the statutory prescribed election machinery, which, I think, under our present statutes, includes primary election machinery. Our primary election statutes, manifestly, were enacted to the end that their prescribed method of nominating candidates, and having the names of the successful candidate or candidates printed upon the final election ballot, would be in furtherance of a fairer expression of the voters than a final election without any primary election. If there be necessity to here notice any probable reason for such legislation, it is readily found in the fact that

there are several hundred thousand voters within the state. I am of the opinion that, there not being sufficient time, following the occurrence of the vacancy in question, to hold a primary election preceding the next general election, there was no legal warrant for the holding of such election.

BEALS, J., concurs with PARKER, J.