GEORGE TURNIS et al., appellants, v. BOARD OF EDUCATION in and for JONES COUNTY et al., appellees.

No. 50290.

(Reported in 109 N.W.2d 198)

924

MAY 2, 1961.

T. M. Ingersoll and Wayne C. Collins, both of Cedar Rapids, for appellants.

Rex Schrader, Jones County Attorney, of Monticello, J. E. Heiserman and James T. Remley, both of Anamosa, and E. W. Brashaw, of Monticello, for appellees.

LARSON, J.—Under rules 308 to 319, Rules of Civil Procedure, plaintiffs filed their petition for a writ of certiorari challenging the jurisdiction and certain acts of the boards of education of Jones, Linn, Dubuque and Delaware Counties, acting as a single board, and its secretary, and the County Superintendent of Schools of Jones County, Iowa. It involves the formation of the Monticello Community School District, referred to herein as the Monticello District, pursuant to the provisions of chapter 275 of the 1958 Code of Iowa as amended by the Acts of the Fifty-eighth General Assembly in 1959 where applicable by the effective date. The plaintiffs are individuals residing or owning land within the proposed reorganized district. The trial court correctly annulled the writ.

The scope of the appeal before us is limited to four assigned errors. In order to conserve space we shall not list them here, but will consider them and the facts involved in the order of their assignment.

I. Appellants contend the trial court erred in holding the election for the proposed district was valid when one of the polling places specified and used was outside the geographical boundaries of the school district. There is no dispute as to the facts concerning this alleged error. The schoolhouse designated and used was just a few feet beyond the boundary line of the proposed district which divided the then-existing Union No. 5 District. The designating officers were mistaken in their

belief that the schoolhouse in existing Union No. 5 was inside the proposed district, but they were not mistaken in the fact that for over twenty-four years the polling place for school elections in that district had been held in that schoolhouse. It appears in the record that on June 2, 1959, the election date, seventeen qualified voters lived within that portion of Union No. 5 which was to be included in the proposed Monticello District. Twelve of them voted at this schoolhouse, all favorable. Five did not vote. The election carried overall by a vote of approximately 1200 in favor and 184 against. Obviously, then, the results either in that district or overall would not change no matter how the other five would have voted. Nevertheless, appellants contend the statutory requirement that the polling place be within the district was a jurisdictional requirement and, as it was not followed, the entire election was void. Appellees contend it was a mere irregularity and, under the facts of this case, would not be a sufficient deviation from the statutory requirements to disenfranchise those who favored the proposal or to void the election. We agree with appellees.

Section 275.20, Code of 1958, provides specifically that "The voters shall vote separately in each existing school district affected or portion thereof upon the proposition to create such new school corporation. School districts affected or portion thereof shall be defined to mean that area included within the boundaries of the proposed new school corporation * * *."

While the regulation is clear as to where voters shall vote, we find no provision which makes absolute compliance a jurisdictional matter, nor does the statute indicate that a failure to comply makes the election void. In the absence of such specific legislative directive, the general rule as to elections would apply. Appellants seem to agree with that rule, for here they refer us to chapter 277 of the Code relating to school elections and also to chapter 49 relating to other elections. The rule is set out in 29 C. J. S., Elections, section 199, page 284, and 18 Am. Jur., Elections, section 113, page 251, section 206, page 319, and section 224, page 330. Generally speaking, it provides that "Statutory regulations governing place of voting are subject to strict enforcement and may be construed as mandatory

before the election. After the election, however, such regulations are ordinarily construed as merely directory." 29 C. J. S., Elections, section 199, page 284. Specifically, there are provisos. While most courts generally follow the rule that after an election has been held the statutory regulations are construed as directory, they qualify it by saying that in the absence of fraud or bad faith or constitutional violation, an election which has resulted in a fair and free expression of the will of the legal voters upon the merits will not be invalidated because of a departure from the statutory regulations governing the conduct of the election, except in those cases where the legislature has clearly and unequivocally expressed an intent that a specific statutory provision is an essential jurisdictional prerequisite and that a departure therefrom shall have the drastic consequences of invalidity. Erickson v. Sammons, 242 Minn. 345, 65 N.W.2d 198, 202; State ex rel. School Dist. No. 56 v. Schmiesing, 243 Minn. 11, 66 N.W.2d 20, 26; Christenson v. Felton, 226 Ark. 985, 295 S.W.2d 361; School District No. 49 v. School Dist. No. 65-R, 159 Neb. 262, 66 N.W.2d 561; State ex rel. Marlowe v. Himmelberger-Harrison Lumber Co., 332 Mo. 379, 58 S.W.2d 750; In re Contest of Election of Vetsch, 245 Minn. 229, 71 N.W.2d 652; Tebbe v. Smith, 108 Cal. 101, 111, 41 P. 454, 457, 29 L. R. A. 673, 49 Am. St. Rep. 68; Jones v. State, 153 Ind. 440, 55 N.E. 229, 232; 18 Am. Jur., Elections, section 114, page 252, section 206, page 319; 29 C. J. S., Elections, section 78, page 104, section 199, page 284.

We subscribe to that view and, although not specifically stated in any recent case, we attempted to follow that rule in the case of State ex rel. Warrington v. Community School District of St. Ansgar, 247 Iowa 1167, 78 N.W.2d 86, cited by both parties herein. Two departures from the statutory directive were involved therein, one slight and inconsequential, which consisted of moving a polling place next door to the place designated, and the other a vital and consequential departure where not only were separate polling places not provided in each district, but it appeared the only polling place provided was so far removed from the places designated that it discouraged and prevented voting by qualified voters in that election.

It is true each decision on election validity in matters of this kind must be determined by the facts disclosed, and whether or not such a departure is fatal is largely one of degree. So in the St. Ansgar case we said the first instance was inconsequential, but the other departure required a reversal. Drastic consequences of election invalidity are not favored after the election unless so required by the statute. Of course, there may be such radical omissions and failures to comply with the essential terms of a directory provision as will lead to the conclusive presumption that injury must have followed, but this is not such a case. Here there was a substantial compliance with the terms of directory provisions and a reasonable observance of the prescribed conditions. There is absolutely no evidence that anyone who was eligible to vote and desired to do so was prevented or even inconvenienced by having the polling place just across the line but in the same locality where all past school elections involving Union No. 5 had been held. No fraud or bad faith in so placing the polling place is alleged or shown, and no constitutional violation is claimed. As bearing on this matter also see Branderhorst v. County Board of Education of Marion County, 251 Iowa 1, 4, 99 N.W.2d 433, 435; Poor v. Incorporated Town of Duncombe, 231 Iowa 907, 913, 914, 2 N.W.2d 294; State ex rel. Greene Com. Sch. Dist. v. Rudd, Rockford, Marble Rock Com. Sch. Dist., 250 Iowa 1269, 1270, 98 N.W.2d 820, 821.

II. Appellants next contend the trial court erred in holding the joint board action on the petition was valid, and satisfied due process of law when two petition signers also actively participated in the consideration and ruling on the petition as members of the joint boards.

Admittedly, two resident property owners within the proposed district signed the petition for the formation of the Monticello Community School District, and later, as members of the joint board, participated in the proceedings to establish the boundaries of the new district held on February 24, 1959. However, eighteen of the twenty members of that board attended that meeting, and the vote to establish the district was unanimous. No actual prejudice is claimed as a result of the partici-

pation by Herman Helgens and Leigh Clark, who were also members of the Jones County Board of Education. Had they not signed the petition, there would have been no cause to complain against them.

The general rule applicable to such matters is set out in 78 C. J. S., Schools and School Districts, section 27, page 673: "The fact that officers or members of the board having power to create or alter school districts are interested parties, in that they are residents and taxpayers of the territory involved, does not affect the validity of their action."

This, of course, would not be true if there was a clear statutory prohibition. We find none in our present statutes. Section 275.17, Code of 1954, since repealed, referred to in State ex rel. Warrington v. Community Sch. Dist. of St. Ansgar, supra, was such a prohibition, but even there we found insufficient participation to set aside the board action. The wisdom of such drastic restrictions on reorganization participation by board members was questionable and somewhat confusing, and the legislature apparently thought so, for by chapter 129, Acts of the Fifty-seventh General Assembly, in section 4, effective May 2, 1957, it repealed that prohibition in section 275.17, Code, 1954. Chapter 275 and section 275.20 of the 1958 Code contain no such limitation on members of a participating board, and we think it quite clear the legislature did not desire disqualification of board members upon such insignificant acts of interest as the signing of a petition for or against a school reorganization proposal. The general rule, we think, is applicable to the matter, and under that rule the acts of the two Jones County board members in signing the petition would not affect the validity of the joint board action in establishing the boundaries of the proposed Monticello District.

Appellants also contend such participation violates due process. Of course no man can be a judge in his own case and he is not permitted to try cases where he has a special interest in the outcome, under the due process clause of our Constitutions. That interest, however, cannot be defined with precision. Circumstances and relationship must be considered. In re Murchison, 349 U. S. 133, 75 S. Ct. 623, 99 L. Ed. 942.

An administrative hearing in the exercise of judicial or quasi-judicial powers, of course, must be fair and impartial. But the constitutional requirement of due process is met by a fair hearing before a regular-established administrative tribunal. 42 Am. Jur., Public Administrative Law, section 137, page 479.

We find herein no violation of due process. These two members were not the sole judges of the plan and their votes were not decisive. In addition, no special, personal, or pecuniary interest which would be sufficient to disqualify them appears. Interest in progressive school reorganization surely is not such an interest. By section 275.6, Code of Iowa, 1958, we find a directive to members of the county boards to carry on a program of reorganization progressively and, insofar as is possible, authorize submission of proposals to the electors as they are developed and approved. Under this record they did no more than perform that duty.

Only a few cases have been found dealing with the effect of unauthorized acts by board members, but those found seem to hold that in the absence of any fraud, lack of good faith or abuse of discretion, the acts of the board are not void. Having been given jurisdiction of the subject matter, the remedy for those acts is by appeal. In the case before us that appeal from the board action in establishing boundaries for the proposed new school district would be to the State Department of Public Instruction and then to the courts. Commonwealth ex rel. Meredith, Attorney General, v. Whitt, 291 Ky. 682, 165 S.W.2d 347.

In Stahl v. Board of Supervisors, 187 Iowa 1342, 175 N.W. 772, 11 A. L. R. 185, cited by appellants, the supervisor who cast the deciding vote clearly had a substantial financial and personal interest in the outcome. We subscribe to the rule that public officers should perform like Caesar's wife, but we must also consider the circumstances, in the absence of statutory disqualification, to determine the likelihood of unfairness and be governed accordingly. We find no such adverse interest here and conclude there is no merit in this assignment of error.

III. Appellants' third assignment contends the court erred in ruling the boundary change made by the State Depart-

ment order was valid. In Brief Point A they argue the stipulation upon which the State Department acted was void, that it lacked timely and authorized execution or ratification by the Delaware County Board of Education, and therefore the decision of the State Department of Public Instruction, referred to herein as the State Department, was void. We do not agree that the State Department's order was void.

An appeal from the action of the joint boards establishing the boundaries of the proposed district made February 24, 1959, was taken to the State Department by the school district of South Fork Township in Delaware County wherein appellants reside. Pursuant to due notice, a hearing was set before the State Department in Des Moines, Iowa, April 20, 1959. True, at that hearing the State Department had before it a stipulation which appeared to be signed by representatives of all four county boards involved, but it was advised at that time that Mr. Gordon S. Keith, a member of the Delaware County Board who resided in the affected area of South Fork, signed for that board without prior formal board action. The State Department considered the appeal and the deletion contained in the filed stipulation and entered its ruling deleting a small territory in Delaware County from that included within the original boundary lines of the proposed Monticello District. When the notice of the election on the proposed school district was published, the boundaries were those established by the State Department after the deletion, and no one objected.

Furthermore, it appears that three of the five board members and the County Superintendent of Delaware County were present at the hearing in Des Moines, and they did not object to the deletion. Appellants contend their failure to object to the stipulation did not amount to ratification or disclose substantial compliance with required board action on the stipulation, and that since the State Department's action was based upon an invalid stipulation the changes were made without lawful authority and were void. However, fraud or misrepresentation is not alleged, and we are not convinced the change depended upon the validity of the stipulation. This is not a contractual matter alone.

Regardless of the authority of Mr. Keith to sign the stipulation on behalf of the Delaware County Board, due notice had been given of the State hearing and no objection to the proposal contained in the stipulation was made by anyone entitled to object at the time of the hearing. The action of the State Department, which had jurisdiction of the subject matter, was not appealed. Its action in fixing boundaries appears to have been accepted by everyone, including the joint county board, before publication of the election notice. We fail to see the significance of the failure of formal action of stipulation approval by the Delaware County Board. Had objections been heard, the State Department surely would have considered them, and we must assume it considered the fact that there had been no formal approval of the stipulation by the Delaware County Board, for it was so advised. We, therefore, shall not concern ourselves here with problems of ratification relating to the stipulations, as interesting as they may be.

We also find no merit in appellants' contention in Brief Point B that the State Department of Public Instruction is not a lawful authority to determine controversies arising under section 275.16 of the 1958 Code of Iowa. This section provides in part: "* * * In case a controversy arises from such meeting [of the joint boards acting as a single board], the county board or boards or any school district aggrieved may bring the controversy to the state department of public instruction, as provided in section 275.8, * * * and if said controversy is taken to the state department of public instruction, a ten-day notice in writing shall be given to all county boards and school districts affected or portions thereof. The state department shall have the authority to affirm the action of the joint boards, to vacate, to dismiss all proceedings or to make such modification of the action of the joint boards as in their judgment would serve the best interest of all the counties. This decision may be appealed to a court of record * * *."

The hearing here was held before the State Superintendent, Mr. J. C. Wright, his assistant, Mr. Paul F. Johnston, and the legal adviser for the department, Mr. Joseph Davis. The authority of such officers to conduct, hear and render the decision of

the State Department of Public Instruction has been before us in two recent cases. In re Durant Community School District, 252 Iowa 237, 106 N.W.2d 670, and Board of Education in and for Franklin County v. Board of Education in and for Hardin County, 250 Iowa 672, 95 N.W.2d 709. We held in both cases that the state board properly delegated to the three officers who conducted the hearing the authority to do what they did, and the procedure was in accord with the practice of the department. Once more we affirm that position and hold that the action taken by the State Department in establishing the boundaries of the Monticello District and deleting a small area in South Fork Township, after due notice and hearing, was authorized, legal, and, since no appeal to the court was taken, final.

IV. Appellants' final assignment contends the court erred in holding the defendants had jurisdiction of the Monticello reorganization. In Brief Point A they contend jurisdiction of the subject matter was vested in the Linn County District Court and the Delaware County District Court when the Monticello petition was filed.

It has always been our position in such reorganization matters that in order to obtain and retain jurisdiction of the subject matter there must be at least substantial compliance with the legislative directive. State ex rel. Cox v. Consolidated Independent School District of Readlyn, 246 Iowa 566, 68 N.W.2d 305; State ex rel. Harberts v. Klemme Community Sch. Dist., 247 Iowa 48, 72 N.W.2d 512. The problem relating to overlapping territory as it relates to the jurisdiction of the subject matter was specifically considered in Sheridan Rural Ind. No. 5 Sch. Dist. v. Guernsey Consol. Sch. Dist., 251 Iowa 460, 100 N.W.2d 418, and any previous confusion as to the application of the jurisdictional requirement relating to subject matter was then settled. As required by the statutes, we said the vital time of exclusive jurisdiction of the involved subject matter relates to the time the boundaries are finally determined, and covers the territory included in the proposed reorganization as published in the election notification. Any attempt to include territory at that time involved in a prior or pending proceeding not abandoned, released or completed,

would result in a jurisdictional defect and an invalid election and reorganization. State ex rel. Harberts v. Klemme Community Sch. Dist., supra. However, when the overlap of territory disclosed in the original reorganization petition has been properly withdrawn or eliminated prior to the final fixing of boundaries, jurisdiction of the subject matter is not affected by the fact that the original proposal or petition included such territory. Sheridan Rural Ind. No. 5 Sch. Dist. v. Guernsey Consol. Sch. Dist., supra. We reaffirm that position now.

Appellants' jurisdictional complaint in Brief Point A of Assignment IV relates to two appeals from rulings of the State Department of Public Instruction on planning controversies under sections 275.8, 275.15 and 275.16, 1958 Code. In each case there was an attempt to appeal the decision to the district court, the first in Delaware County involving a planning dispute between Delaware and Jones Counties, and the second in Linn County involving Linn and Jones Counties.

We have carefully examined the chronological history of the events bearing on these contentions and find them without merit. The appeal to the Delaware District Court was never shown perfected and was formally dismissed April 7, 1959. The Linn County appeal was dismissed February 11, 1959, prior to the time the joint boards, acting as a single board, finally fixed the boundaries of the proposed Monticello District February 24, 1959.

Appellees contend, and we agree, that it is immaterial whether or not the reorganization proceedings were in the courts on the day the petition was filed. It is also immaterial that planning appeals were pending when the boundaries were fixed on February 24, 1959. It appears and is presumed that there had previously been sufficient preliminary plans and surveys contemplated by sections 275.1 to 275.5. Liberty Consol. Sch. Dist. v. Schindler, 246 Iowa 1060, 70 N.W.2d 544. Once completed as required by the statute, there are no provisions in the Code which require additional studies and surveys to be made before boundaries may be finally fixed, even though they do not correspond with the original plan. The matter is then left to the judgment of the board, and no rules are prescribed

which it must follow in making changes. Archer v. Board of Education in and for Fremont County, 251 Iowa 1077, 104 N.W.2d 621.

It is also true that, even though the joint county boards had not complied with former county plans in fixing the boundaries of the proposed Monticello District, it did not act beyond its authority. Section 275.16 provides:

"The joint boards acting as a single board shall determine whether the petition conforms to county plans or, if the petition requests a change in county plans, whether such change should be made, and shall have the authority to change the plans of any or all the county boards affected by the petition, and it shall determine and fix boundaries for the proposed corporation as provided in section 275.15 * * *."

The petition here requested a change in county plans. In considering these provisions of the Code in a similar case of Hubka v. County Board of Education of Mitchell County, 251 Iowa 659, 663, 102 N.W.2d 167, 169, we said: "It thus quite clearly appears that the joint Boards acting as a single Board have authority to amend tentative county plans. * * * that in exercising such authority they exercise a discretion as to whether or not such change is 'for the best interests of all parties concerned, having due regard for the welfare of adjoining districts'."

Courts, of course, will not act to set boundaries. In re Community School Dist. of Malvern, 250 Iowa 1240, 98 N.W.2d 737, and citations. Furthermore, there was no appeal from the State Department's action of April 25, 1959, finally establishing the boundaries. There was no objection to a planning change, the vote by the joint boards February 24, 1959, being unanimous. This clearly indicates a settlement of any prior planning disputes between the different county boards. We conclude by their action on February 24, 1959, the joint boards effectively and authoritatively changed the planning to conform to the newly established boundaries, and that there was no jurisdictional overlapping on that date which would make their action illegal.

Appellants further argue that when a stay order was

issued by the Linn County District Court on the basis of the planning appeal and the members of the joint board, in conformance with the order, did not proceed with the plan to establish boundaries of the proposed Monticello reorganization at the meeting called November 25, 1958, that inaction amounted to an abandonment of the proceedings. We do not agree. It seems clear all considered the meeting had to be adjourned, and while no official vote was taken to adjourn, there was no evidence of any intention to abandon the proceedings and dismiss the petition. Mr. Remley, the Jones County attorney, stated, "if the chair feels that this meeting has to be adjourned, in view of the court order I don't think it takes a motion at all." Subsequent acts indeed indicate an intent not to dismiss or abandon the proceedings. When no action at such a meeting is taken to fix boundaries, dismiss the petition, or adjourn, we must examine the circumstances to determine the intention of the members at that time. As bearing on this matter, see Brighton Ind. Sch. Dist. v. County Boards of Education, 252 Iowa 734, 108 N.W.2d 510, and citations. When the stay order was released, a new notice was given and a hearing was held on February 24, 1959. Under these circumstances we must conclude the meeting of November 25, 1958, was simply adjourned in compliance with the order of the Linn County District Court and could not be found a willful or negligent failure to proceed, justifying a dismissal under the statutes.

Appellants contend proper planning proceedings were not taken, but we must assume here that the joint county boards performed their duty under sections 275.1 to 275.5 inclusive, and we find no jurisdictional defect due to lack of proper planning. Liberty Consol. Sch. Dist. v. Schindler, 246 Iowa 1060, 70 N.W.2d 544, Archer v. Board of Education, 251 Iowa 1077, 104 N.W.2d 621, and Hubka v. County Board of Education, 251 Iowa 659, 102 N.W.2d 167, all supra.

Even if there had been a conflict in plans, it may be assumed that any joint county plans inconsistent with the petition were rectified as requested by the petition under authority of section 275.16, Code of Iowa, 1958.

Under Brief Point B of this assignment appellants

contend the geographical boundaries of the proposed district were in conflict with the Maquoketa Valley Community School reorganization which had not been completed. The record discloses the Maquoketa Valley Community School District election was held and carried October 8, 1958, and the plat establishing the boundaries of this district was filed in the office of the Delaware County Auditor on October 9, 1958. Upon that date the formation was complete and the validity of the Maquoketa District has not been challenged. Sections 274.4 and 274.5. The petition for the reorganization of the Monticello Community School District was filed November 3, 1958.

We fail to see what effect any claimed exclusion, proper or improper, from the Maquoketa District after its reorganization was complete could have upon the subsequent reorganization of the Monticello District. Furthermore, it seems clear from the record that no land included in the Maquoketa Valley Community School District as voted on and completed was ever included within the territory in the Monticello petition filed subsequent to the completion of the Maquoketa District. Even if there had been some territorial overlap before the Maquoketa completion, it would not have precluded the acquisition of jurisdiction here of the excluded territory after the completion of the Maquoketa District. We considered the possible effect of litigation involving a recently established district on the boundaries of a district being proposed near by in Archer v. Board of Education, supra, 251 Iowa 1077, 104 N.W.2d 621, and concluded the term "determined" as it related to boundaries referred to those established by the election and filing, and that as to the question of boundaries it was unnecessary to await a final decision of the Supreme Court. This we said was especially true in view of our holding in In re Community Sch. Dist. of Malvern (Mills County), 250 Iowa 1240, 98 N.W.2d 737, that fixing boundaries was a legislative act which could not be delegated to or exercised by the courts. We are satisfied the boundaries of the Maquoketa Valley School District as established did not overlap with those fixed by the joint board action of February 24, 1959, and established by the election approval of the Monticello Community School District June 2, 1959, and

there was no possible jurisdictional conflict here. As bearing on this matter see State ex rel. Moulton v. Consolidated Ind. Sch. Dist. of Buck Creek, 195 Iowa 637, 192 N.W. 5; State ex rel. Schilling v. Community Sch. Dist. of Jefferson, 252 Iowa 491, 106 N.W.2d 80.

Finally appellants contend in Brief Point C that the defendants lost jurisdiction of the reorganization by failing to hold the November 25, 1958, meeting upon notice given pursuant to sections 275.14 to 275.16 of the 1958 Code. The assignment is without merit, as we have already pointed out in this division. We find in the procedure followed substantial compliance with the requirements of chapter 275 of the Code.

V. We are inclined to again express the position of this court set out in the case of Branderhorst v. County Board of Education, 251 Iowa 1, 6, 99 N.W.2d 433, where we said we believe it our duty to liberally construe the law with a view to promoting the reorganization of school districts in the state as expressed in the statutes. Technical or fine lines will not be drawn or inferences indulged which would invalidate a reorganized and operating school district such as we have here. On the other hand, all inferences in favor of the legality of official steps will be observed, and only where it clearly appears there was a failure to substantially comply with the statutory requirements will there be found jurisdictional violations. We find no such jurisdictional defects in the case at bar, no substantial deviations from the requirements of the statutes, and that the trial court's action in dismissing the petition must be affirmed. The writ, therefore, is annulled.— Affirmed.

All JUSTICES concur.