FRANK ROLLINS, for himself and all others similarly situated, plaintiff-appellant, v. BURTON HALVERSON, County Superintendent of Schools et al., defendants-appellees; ERNEST JOHNSON, plaintiff-intervenor, OAKLAND INDEPENDENT SCHOOL DISTRICT et al., defendant-intervenors-appellees.

No. 51549.

(Reported in 132 N.W.2d 465)

400

JANUARY 12, 1965.

REHEARING DENIED FEBRUARY 9, 1965.

Richard C. Turner, of Council Bluffs, for plaintiff-appellant.

Noran L. Davis, Pottawattamie County Attorney, of Council Bluffs, for defendants-appellees.

Hogzett & Burgett, of Oakland, and Smith, Peterson, Beckman & Willson, of Council Bluffs, for defendant-intervenors-appellees.

LARSON, J.—This is another school reorganization case raising a number of questions, some new and some old, but the principal issue is whether by changing the method of electing directors from that set forth in the petition, the Pottawattamie County Board of Education, hereinafter called the board, exceeded its authority, and whether the trial court erred in refusing to invalidate the school reorganization. Appellant contends the board acted arbitrarily and abused its discretion in making the change, and claims the reorganization was invalid because plaintiff and others were deprived of their right to a fair hearing and due process of law and that irregularities in the election required a finding that it was not fairly conducted. These contentions are without merit.

From the record we learn a steering committee, composed of residents of Lincoln, Wright, Center, Belknap, Valley, James, York and Washington Townships, and the Town of Oakland in Pottawattamie County, undertook a study of the feasibility of a third attempt to reorganize the Oakland Independent School District into the Oakland Community School District under chapter 275, Code of Iowa, 1962. A plan was conceived and a petition and plat were prepared and circulated for the required signatures. After they were obtained, the petition was duly filed with the County Superintendent of Schools on June 4, 1963. The legal description varied in three or four instances from that shown on the plat, but they were minor and none resulted in a lesser area being included in the reorganization than that shown on the plat. No question is raised as to the right of the board to correct this boundary variance.

This petition also divided the area into seven director districts and specified that each director district "shall be represented on the school board by one director who shall be a resident of such director district and shall be elected by the vote of the electors of said director district", under authority of section 275.12(2)(d), Code of Iowa, 1962.

Pursuant to notice of time to file objections, published as required by section 275.14 of the Code, which notice appeared to include a copy of the petition but which left out the provision as to the method of election of the district directors and did not

include a plat, a public hearing was held at the schoolhouse in Oakland, Iowa, at eight o'clock p.m. on July 29, 1963. In the meantime on March 14 and March 28, 1963, plats showing the area being considered were published in the same newspaper by the steering committee.

Four persons appeared and presented objections to the County Board, mostly as to minor area changes. None objected to the proposed method of electing directors. The meeting was adjourned and, due to the absence of two of its members, the board deferred its conclusion to a recessed board meeting scheduled for July 30, 1963, which was actually held on July 31, 1963. At that meeting one additional member was present and the board established the boundaries of the proposed school district as shown by the plat attached to the petition and, in addition, changed the method of electing directors specifying that all directors would be elected at large. This ruling or order was duly published as required by section 275.15. At that time plaintiff was a member of the Center Township School Board, which was affected by this proposed reorganization.

No appeal from that ruling was taken within twenty days after publication as permitted by section 275.15, and on September 19, 1963, pursuant to the provisions of section 275.18, the county superintendent published notice of a special election to be held October 1, 1963, on the formation of this proposed reorganized district.

As required by law, the county superintendent designated the polling places and the judges and clerks of the election, and the election was held, resulting in approval in seven of the nine districts and an overall total majority for reorganization, as required in section 275.20, Code, 1962.

When February 3, 1964, was set for the election of directors for the reorganized district and due notice given, plaintiff commenced this action and asked for a temporary injunction to prevent it.

The trial court refused the temporary writ, but did enjoin the directors elected from pursuing their duties until the case was tried upon its merits. On February 21, 1964, the case came on for hearing and the court upheld the validity of the reorgani-

zation and dismissed the former temporary injunction against the duly elected directors. This court denied an application to stay the proceedings on May 14, 1964, and the reorganized district has been in full operation since July 1, 1964. Intervenor below does not join in this appeal.

I. Once again we are asked to consider the extent of authority conferred by the legislature on county boards of education under chapter 275 of the Code. Appellant's principal contention is that the Pottawattamie County Board of Education acted arbitrarily, unreasonably and capriciously, and abused its discretion in changing the manner or method of election from that set forth in the petition. Thus we must first consider the extent of the board's discretion as set forth in section 275.12(4) of the 1962 Code. This law was enacted by the Fifty-seventh General Assembly and is known as chapter 130. It provides:

"The county board or boards of education in reviewing such petition [for reorganization] as provided in sections 275.15 * * * *shall review* the proposed method of election of school directors and shall have the *duty* and *authority* to change or amend such plan in any manner, including the changing of boundaries of director districts if proposed, or to specify a different method of electing school directors on the basis of area, school population, or assessed valuation as may be required by law, justice, equity, and the interest of the people. In such action the county board * * * shall follow the same procedure as is required by sections 275.15 * * * for other action on the petition by the county board * * *." (Emphasis supplied.)

Section 275.12(2) relates to directors, and provides: "Such petition shall also state the number of directors which may be either five or seven and the method of election of the school directors of the proposed district. The method of election of the directors shall be one of the following optional plans: [listing four]."

The petition originally filed selected section 275.12(2)(d) as the manner of electing district directors. It provides: "Division of the entire school district into designated geographical subdistricts, to be known as director districts, each of which director districts shall be represented on the school board by one director

who shall be a resident of such director district and *who shall be elected by the voters of said director district. * * *.*" (Emphasis supplied.)

The county board changed this to the option set out in section 275.12(2)(b), which provides: "Division of the entire school district into designated geographical subdistricts, to be known as director districts, each of which director districts shall be represented on the school board by one director who shall be a resident of such director district but *who shall be elected by the vote of the electors of the entire school district. * * * The boundaries of such director districts and the area and population included within each district shall be such as justice, equity, and the interests of the people may require. * * *.*" (Emphasis supplied.)

Thus it appears the only change made by the county board was that instead of having the directors chosen by the voters of their respective districts, they would be chosen by the voters of

the entire school district, or, in other words, all directors would be elected at large, and the voters could vote each year rather than only each third year when the director from their district was to be chosen.

█ █ The discretion granted the county board under this section, like that provided for changing proposed boundaries in the petition under section 275.15, Code, 1962, must be given a broad and liberal construction, and its action in performing the duty imposed will be upheld unless it clearly appears that discretion has been abused. Hubka v. County Board of Education, 251 Iowa 659, 663, 102 N.W.2d 167. In other words, changes made by the board in the tentative county plan under the authority of these statutes are presumed to have been made within that authority, and, unless it appears the action violates a specific statutory restriction, the board's action will be upheld. Allely v. Board of Education in and for Mills County, 252 Iowa 1142, 110 N.W.2d 410.

█ █ As we understand it, appellant does not contend such boards do not have authority to make such changes if made for the reasons set forth in the statute. It is his contention that this county board exceeded its delegated authority, that it did not

have the basis upon which it could act to change the method of electing directors, did not act on such basis, and did not act as a board. We cannot agree. While there were no objections by anyone to the proposed method of selecting directors, there is no statutory requirement that there be an objection before the county board could act. The board could well review the petition in this regard and decide on its own motion that another authorized method under section 275.12(2) would be better under the existing situation known to them. There is nothing in this record to indicate the board did not, as a basis for this change, consider the area and school population, and decide the issue as required by law justly, equitably and in the interest of the people. While there was some evidence the board itself preferred plan (b) in such cases, that preference perhaps was the result of past experiences in similar reorganizations. Nothing appears to indicate this decision was not arrived at in good faith and after consideration of the lawful basis for such a change. We noted that two other prior petitions had used the plan set out in the original petition and had been rejected by the voters, and the favorable vote here indicated the change met majority approval.

True, an arbitrary policy of a board without consideration of area, school population or assessed valuation, as required by law, justice, equity, and the interest of the people, clearly established, might well constitute an abuse of board discretion, but we do not find such to be the case here.

The learned trial court correctly held that there was no obligation on the part of the County Board of Education to establish its reasons for making this change, that it was plaintiff's burden to prove the board's action was arbitrary and capricious and that its discretion was abused, and that plaintiff and plaintiff-intervenor had failed to sustain that burden of proof.

There is no merit in the contention that such a change required a new notice and opportunity for objections. The plan approved was published as required in section 275.15, and the provisions of that section require no more. No new notice and hearing are provided for therein. In passing, we may note that

no appeal within twenty days after publication of decision was taken by any township board, the body granted a right to appeal in section 275.15. It must, therefore, be assumed that the change was known to all and was not found objectionable to those concerned at that time.

Indeed, even appellant did not complain until after the plan was approved by the electorate and the proceedings were taken to elect directors.

■ One other contention as to the board's authority to act should be considered. Appellant maintains all members of the county board must be present at the hearing on objections and that one not present cannot participate in the decision to amend that plan. We cannot agree. The rule is well settled that unless the statute specifies differently, the board's action is satisfied by a showing of quorum action. See section 4.1(4), Code, 1962; O'Connor v. Youngblade, 250 Iowa 808, 816, 817, 96 N.W.2d 457; 2 Am. Jur.2d, Administrative Law, section 196, page 28. There is no specific statutory requirement in chapter 275 of the Code, and it must therefore be concluded that quorum action is sufficient. Any other holding would tend to hinder and delay school reorganizations which would not conform to the announced legislative policy in such matters. Section 275.1, Code, 1962; Allely v. Board of Education, supra. It is fair to assume that a board member not present at the hearing will perform his duty and fully inform himself of the merits of the matter considered if he participates in the final decision. Nothing to the contrary appears. Since there were no objections to the method of selecting directors set out in the petition, absent board members at the July 28 meeting missed no plea for that plan. We find no error in permitting such absent member to participate in the final decision.

■ It is true the method of choosing directors was not set out in the notice of hearing on objection to the petition, but we find no statutory requirement that it be set out in the notice. The only statutory requirement is that the notice refer all interested persons to the petition then on file. Section 275.14, Code, 1962. Unless, then, it is shown the notice as published was wrong and misled the elector, there was no substantial departure

from the statutory requirements. State ex rel. Schilling v. Community School District, 252 Iowa 491, 494, 106 N.W.2d 80. It was not so shown.

Appellant appears to have been interested in these school matters over the past years, and we cannot believe he was unaware of the changes made in the reorganization proposal prior to the notice of election of directors. Although it appears his action was timed to delay the operation of the new district, that was not accomplished. This action then assumes the character of a quo warranto proceeding and, in fact, determines the validity of the Oakland Community School District as a properly reorganized district in Pottawattamie County.

II. Several other contentions, mostly designated as irregularities, require little discussion. The trial court concluded the election procedures were valid and the results of the election were accurately tabulated and reported by the judges and clerks of the election, and that the proposal was validly adopted by the electors. We agree.

There is no merit in the contention that because several of the voting places selected were in homes of those known to favor reorganization, and several judges and clerks were known as advocates of reorganization, the election was unfairly conducted. There was no evidence of undue acts or statements by any of those parties which might tend to influence the voters on that day, and no testimony that any elector failed to vote due to fear or intimidation.

The same conclusion must be reached as to the counting of two ballots which may have been so marked as to be identifiable. Both were cast in Center Township, one for the plan and the other against it. The trial court wisely pointed out there was no error in counting both, as the judges of that township had determined to count all ballots which clearly expressed the voter intent, and that whether they were counted or rejected, the outcome of the election in that township or in the district would not be changed. We agree, for while one appeared to be both a check and a cross, the other appeared to be an asterisk, so both ballots might be called identifiable. Both clearly expressed the voter's intention. See Beck v. Cousins, 252 Iowa

194, 197, 106 N.W.2d 584, 86 A. L. R.2d 1017. As bearing on such irregularities and their effect after elections, see Turnis v. Board of Education of Jones County, 252 Iowa 922, 109 N.W.2d 198, 201; Wall v. County Board of Education of Johnson County, 249 Iowa 209, 222–224, 86 N.W.2d 231.

█ III. Applying here our rule of liberal construction of the provisions of chapter 275 and the broad and complete discretion delegated to the boards thereunder, we must hold the authority to change the proposed method of electing directors as authorized in section 275.12 is broad and complete, and that in the absence of a clear showing of fraud or abuse of that discretion, the county board's action in making such a change must be upheld. Since the showing here in that regard is insufficient, we conclude the county board's action in modifying the plan in the proposed petition was proper. Due notice having been given, the electorate was well advised as to the reorganization plan submitted. Finding no substantial evidence of irregularities in the conduct of the election or counting of ballots, that election must be upheld and the subsequent selection of directors under the approved plan confirmed.

The action of the trial court in dismissing the writ must be sustained and the validity of the Oakland Community School District upheld.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.